On petitioners' Coles reconsideration filed May 27; on response to reconsideration filed June 17, reconsideration allowed; former opinion filed April 27 (62 Or App 682, 662 P2d 755) adhered to December 7, 1983, petition for review allowed February 15, 1984 (296 Or 486) See 297 Or 290, 686 P2d 316 (1984)

WARREN et al,
*Petitioners,*

*v.*

LANE COUNTY et al,
*Respondents.*

(81-102; CA A25365)

672 P2d 1213

Timothy J. Sercombe and Harrang & Swanson, Eugene, for petition.

Michael E. Farthing and Husk Gleaves Swearingen Larsen & Potter, Eugene, contra.

RICHARDSON, J.

Buttler, J., dissenting.

## RICHARDSON, J.

Petitioners seek Supreme Court review of our opinion holding that they do not have standing to appeal a land use decision to the Land Use Board of Appeals (LUBA) under Oregon Laws 1979, chapter 772, § 4(3) as amended by Oregon Laws 1981, chapter 748.[1] They thereby petition this court for reconsideration. ORAP 10.10. We allow reconsideration and adhere to our opinion.

Petitioners contend, *inter alia,* that they

"* * * appeared in opposition to [the land use decision] at the West Lane Planning Commission proceedings. They appeared as interested persons. Under *Benton County [v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982)] they are 'aggrieved.' "

That contention is identical in substance to the one we rejected in *Jefferson Landfill Comm. v. Marion Co.,* 65 Or App 319, 671 P2d 763 (1983).

The remaining points we consider it necessary to address are either raised by the dissenting opinion or are amplifications in that opinion of points made by petitioners. The dissent states:

"* * * [I]t is clear from * * * subsection [4] (3) that it applies *only* to petitions for LUBA review of local *quasi-judicial* land use decisions. Assuming that the Coles' standing is controlled by that section, they appeared as interested persons opposing the changes, and the decision went against them. They were, therefore, 'aggrieved' as that term is discussed in *Benton County v. Friends of Benton County, supra. See Jefferson Landfill Comm. v. Marion Co., supra,* Buttler, J., dissenting." 65 Or App at 13. (Emphasis in original; footnote omitted.)

That statement reiterates the view of the dissenting members of this court in *Jefferson Landfill* regarding the relationship between an appearance and aggrievement under section 4(3), and the statement is contrary to the majority's reasoning and holding in that case. The statement therefore implicitly acknowledges that, if petitioners are subject to the standing

---

[1] This section was repealed by Oregon Laws 1983, ch 827, § 59. Effective October 1, 1983, § 31(3) of the 1983 Act establishes standing criteria for appeals to LUBA from quasi-judicial land use decisions.

criteria of section 4(3) for appeals from quasi-judicial land use decisions, the court's opinion in *Jefferson Landfill* is conclusive against petitioners.

However, the dissent also states that, if the local decision petitioners seek to appeal was legislative rather than quasi-judicial, "there appears to be no standing requirement similar to that required for reviewing quasi-judicial land use decisions." The difficulty with that proposition is that petitioners state in their petition for review, and have maintained throughout this appeal, that "[s]tanding for [their appeal to LUBA] is governed by Oregon Laws 1979, Ch. 772, Section 4(3), as amended by Oregon Laws, 1981, Ch. 748." As the dissent notes, section 4(3) by its terms pertains only to appeals to LUBA from quasi-judicial decisions. It is immaterial whether petitioners *could* have made an argument that their standing comes from a source other than section 4(3); the argument and the supporting factual showing were for petitioners, not this court, to make.

The dissent concludes:

"Given that LUBA has exclusive jurisdiction to review the legislative decision here involved, someone must have standing to seek that review. I would hold that anyone who resides in the subarea affected by the proposed plan amendment has standing before LUBA, at least if that person appeared in some stage of the local proceedings as an interested person, as the Coles did here. If we do not so hold, then no one, apparently, would have standing even to challenge the defective notice under ORS 215.060, even though the failure to comply with that statutory requirement renders the action of the local body of no effect. That makes no sense, and the legislature could not have intended that result." 65 Or App at 14.

Those points were considered and properly rejected in our original opinion. We stated there that petitioners

"* * * do not contest LUBA's statement that '[p]etitioners, for purposes of claiming standing, do not assert they were entitled as of right to notice and hearing.' They argue that they are *aggrieved* because they were not given adequate notice, but that proposition is circular: if they were *entitled* to notice, they have standing, whether or not notice was given; if they were not entitled to notice, it is difficult to see how their not receiving notice in itself makes them aggrieved and

thereby gives them standing." 62 Or App at 686. (Emphasis in original.)

We also stated:

"Petitioners conclude that, if residency is insufficient to provide standing, there may be no possibility of an appeal from significant land use decisions and the legislature therefore must have intended residency to provide standing.

"In our view, that argument turns the inquiry inside out. It is manifest that, where the legislature makes the standing of the objector a condition precedent to review of a decision, it does not intend for review to occur if no one has standing. That point is emphasized by the fact that, *elsewhere* in the land use statutes, the legislature *has* provided for review proceedings that are not contingent on objection or the objector's standing, *e.g.,* comprehensive plan compliance acknowledgment pursuant to ORS 197.251. * * *" 62 Or App at 688-89. (Emphasis in original.)

Stated otherwise, the legislature established *both* a method for appealing local land use decisions *and* standing limitations on the exercise of appeal rights. The LUBA statutes do not differ in that regard from many other statutes which create a remedy and impose limitations on its invocation. *See, e.g.,* ORS chapter 28 (governing declaratory judgment actions). By establishing the standing criteria in section 4(3), the legislature manifested its intent that land use decisions that are opposed only by persons with abstract interests, like those of the petitioners here, should not be appealed. The wisdom of the legislative policy is not before us and, if it were, it would be difficult to assail.

Reconsideration allowed; former opinion adhered to.

**BUTTLER, J.,** dissenting.

Petitioners Cole ask that we reconsider our decision affirming LUBA's order dismissing their appeal for lack of standing under Oregon Laws 1979, chapter 772, section 4(3), as *amended by* Or Laws 1981, ch 748, § 35. If the Lane County action was the result of a quasi-judicial proceeding, I believe, for the reasons stated in my dissent in *Jefferson Landfill Comm. v. Marion Co.,* 65 Or App 319, 671 P2d 763 (1983), that under the Supreme Court's opinion in *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982), these petitioners have standing. If the county's action was

legislative, as I believe it was, they also have standing, but for different reasons.

Petitioners Cole, along with the other persons who joined with them in the original petition for judicial review in this court, sought LUBA review of a land use decision of Lane County that enabled respondents Renaghan to develop 186 acres with a 40-unit lodge, restaurant, trading post, 30 cabins, parking facilities, trails, two owner's residences, wells and drain fields. The property abuts Highway 101 to the west and is located approximately 15 miles north of Florence. In order to authorize the Renaghans to proceed with that development, it was necessary for Lane County to amend its Coastal Subarea Plan, adopt a Goal 2 exception to Goal 4 "allowing forest land resources conversion" and enact zone changes.

Petitioners Cole live within the Lane County Coastal Subarea, and contend, *inter alia,* that, as residents of that portion of the county, they were entitled to the notice required by ORS 215.060, which provides:

> "Action by the governing body of a county regarding the plan shall have no legal effect unless the governing body first conducts one or more public hearings on the plan and unless 10 days' advance public notice of each of the hearings is published in a newspaper of general circulation in the county or, in case the plan as it is to be heard concerns only part of the county, is so published in the territory so concerned and unless a majority of the members of the governing body approves the action. The notice provisions of this section shall not restrict the giving of notice by other means, including mail, radio and television."

By the express terms of that statute, if the required notice is not given, the action taken by the governing body regarding the comprehensive plan "shall have no legal effect." In their petition for review before LUBA, the petitioners contended that the county's land use decision was of no legal effect, because the required notice had not been given. Respondents contended before LUBA, and here, that the Coles do not have standing before LUBA under Oregon Laws 1979, chapter 772, section 4(3), *amended by* Or Laws 1981, ch 748, § 35, which provides:

> "(3)   Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the

board for review of a quasi-judicial land use decision if the person:

> "(a) Appeared before the local government or special district governing body or state agency orally or in writing; and

> "(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

The contention is, and we held, that the Coles do not come within section 4(3)(b), because, even though they appeared, they were not entitled as of right to notice and hearing and were not adversely affected or aggrieved by the decision.

The notice referred to in subsection (b) appears to contemplate the kind of notice generally required with respect to quasi-judicial proceedings, such as zone changes, variances and the like, involving only those persons living within a specified distance from the property involved. In fact, it is clear from subsection (3) that it applies *only* to petitions for LUBA review of local *quasi-judicial* land use decisions. Assuming that the Coles' standing is controlled by that section, they appeared[1] as interested persons opposing the changes, and the decision went against them. They were, therefore, "aggrieved" as that term is discussed in *Benton County v. Friends of Benton County, supra. See Jefferson Landfill Comm. v. Marion Co. supra,* Buttler, J., dissenting.

If, however, the local decision here was legislative, which I think it was, rather than quasi-judicial (*see Neuberger v. City of Portland,* 288 Or 155, 603 P2d 771 (1979)), there appears to be no standing requirement similar to that required for reviewing quasi-judicial land use decisions. Yet, the decision that petitioners seek to have reviewed is clearly a "land use decision" under ORS 197.015(10), which provides:

> "(10) 'Land use decision' means:

---

[1]The Coles alleged that they appeared before the Planning Commission; they did not allege that they appeared before the County Commissioners. LUBA applied its decision in *Weber v. Clackamas County,* 3 Or LUBA 237 (1981), to conclude that the Coles' appearance before the Planning Commission was sufficient to satisfy the statutory requirement when, as here, the hearing before the County Commission was not *de novo.* That aspect of the petitioners' standing is not contested in this court.

"(a) A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(A) The goals;

"(B) A comprehensive plan provision; and

"(C) A land use regulation; or

"(b) A final decision or determination of a state agency other than the commission with respect to which the agency is required to apply the goals."

As such, LUBA has exclusive jurisdiction for review. Or Laws 1979, ch 772, § 4(1).

Given that LUBA has exclusive jurisdiction to review the legislative decision here involved, someone must have standing to seek that review. I would hold that anyone who resides in the subarea affected by the proposed plan amendment has standing before LUBA, at least if that person appeared in some stage of the local proceedings as an interested person, as the Coles did here. If we do not so hold, then no one, apparently, would have standing even to challenge the defective notice under ORS 215.060, even though the failure to comply with that statutory requirement renders the action of the local body of no effect. That makes no sense, and the legislature could not have intended that result.

Accordingly, I would grant the petition and would reverse as to petitioners Cole and remand the case to LUBA.

Rossman and Newman, JJ, join in this dissent.